Dr. Dariush Adli  SBN 204959
adli@adlilaw.com
Drew H. Sherman SBN 237045
drew.sherman@adlilaw.com
Te'Aira Law SBN 289118
teaira.law@adlilaw.com
ADLI LAW GROUP, P.C.
444 South Flower St., Suite 3100
Los Angeles, California 90071
Telephone:  (213) 623-6546
Facsimile:  (213) 623-6554

Attorneys for PLAINTIFFS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HAKIM, an individual; SAN JULIAN DISCOUNT MART, INC., a California Corporation, f/b/n MURANO HOME FURNISHING; and Mybecca, Inc., a California Corporation;<br><br>    *Plaintiff*,<br><br>  v.<br><br>MURANO, INC., a California Corporation, a/k/a URBAN MALL; MURANO SHADES, INC.,  a California Corporation; MURANO WORLD IMPORTS, a business of unknown formation; BAHRAM DADBIN,  a/k/a DANNY DADBIN a/k/a DANNY MURANO, an individual; JASON DADBIN, an individual; JOSHUA DADBIN, an individual; and DOES 1 through 20, inclusive,<br><br>    *Defendants*. | Case No. 2:15-cv-5633 JVS-(PLAx)<br><br>The Honorable James V. Selna<br><br>**EXHIBIT A TO THE DECLARATION OF DREW H. SHERMAN IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR AN ORDER ALLOWING PLAINTIFFS' MOTION TO EXCEED 25 PAGES**<br><br>Complaint Filed: July 24, 2015 |

*(left margin, rotated)* ADLI LAW GROUP, P.C.   www.adlilaw.com   (213) 623-6546

*(bottom left)* 1659.202

1

Dr. Dariush Adli  SBN 204959
  adli@adlilaw.com
Drew H. Sherman SBN 237045
  drew.sherman@adlilaw.com
ADLI LAW GROUP, P.C.
444 South Flower St., Suite 3100
Los Angeles, California 90071
Telephone:  (213) 623-6546
Facsimile:  (213) 623-6554

Attorneys for PLAINTIFFS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HAKIM, an individual; SAN JULIAN DISCOUNT MART, INC., a California Corporation, f/b/n MURANO HOME FURNISHING; and Mybecca, Inc., a California Corporation;<br><br>                              Plaintiff,<br><br>          v.<br><br>MURANO, INC., a California Corporation, a/k/a URBAN MALL; MURANO SHADES, INC., a California Corporation; MURANO WORLD IMPORTS, a business of unknown formation;     BAHRAM     DADBIN,     a/k/a DANNY DADBIN a/k/a DANNY MURANO, an individual; JASON DADBIN, an individual; JOSHUA DADBIN, an individual; and DOES 1 through 20, inclusive,<br><br>     Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.<br>2:15-cv-5633 JVS-(PLAx)<br><br>PLAINTIFFS DAVID HAKIM, SAN JULIAN DISCOUNT MART, INC., AND MYBECCA, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE ACTION FOR LACK OF PROSECUTION<br><br><br>Hearing<br>Date:     November 20, 2017<br>Time:      1:30 p.m.<br>Judge:     James V. Selna<br><br><br>Action filed: July 24, 2015 |

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

## TABLE OF CONTENTS

I.   **INTRODUCTION** ..........................................................................1

II.  **SUMMARY OF DEFENDANTS' DILATORY CONDUCT** ...........4

A.  **Unnecessary Motions To Dismiss Counterclaims** .....................5

B.  **Lack Of Participation In The Rule 26f Report** ..........................7

C.  **Late Served Initial Disclosures** .................................................7

D.  **Defendants' Dilatory Discovery As Failure To Prosecute** ..........8

E.  **Failure To Meet And Confer And Misrepresentations** ............10

F.  **December 12, 2016 – First Pre-Trial Conference Order Due Date** ............12

G.  **December 19, 2016 Status Conference** .....................................14

H.  **January 17, 2017 – Second Pretrial Conference Order Filing** ...................16

I.  **March 30, 2017 – Third Pretrial Conference Order Filing** .........................18

J.  **July 13, 2017 – Fourth Pretrial Conference Order Filing** ..........................20

K.  **Post Script: Defense Counsel's Outrageous Behavior Continues** ...............22

III. **ARGUMENT** ................................................................................23

A.  **Legal Authority For Motion For Reconsideration** .................23

B.  **FRCP 41 Counsels Against Dismissal Of This Action** ............25

1.  **Expeditious Resolution of Litigation and the Court's Docket.** ...............27

2.  **The Risk of Prejudice to Defendants** ....................................30

3.  **Public Policy Favoring Disposition of Cases on their Merits** ..................32

4.  **Less Drastic Alternatives** ......................................................32

IV. **CONCLUSION** ...........................................................................34

i

1659.202

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406 (9th Cir. 1990) .............................. 2, 4

4

*Allen v. Bayer Corp. (In re : Phenylpropanolamine ( PPA) Prods. Liab. Litig.),* 460

5

    F.3d 1217 (9th Cir. 2006) ....................................................................................... 2

6

*Anderson v. Air West, Inc.,* 542 F.2d 522 ...................................................... 31, 32

7

*Barger v. Baltimore & O. R. Co.,* 130 F.2d 401 (U.S. App. D.C. 1942) ................. 25

8

*Cannon Part, Ltd. v. Cape Cod Bio Corp.,* 225 F.R.D. 247 (N.D.Cal.2003) 25, 27, 28

9

*Carroll v. Nakatani,* 342 F.3d 934 (9th Cir. 2003) .................................................. 24

10

*FDIC v. Countrywide Sec. Corp.,* 966 F. Supp. 2d 1031 (C.D. Cal. 2013) ............. 24

11

*Ferdik v. Bonzelet,* 963 F.2d 1258 (9th Cir. 1992) ................................................ 27

12

*Gardner v. Bauer,* 2015 U.S. Dist. LEXIS 72640 (E.D. Cal. 2015) ........................ 33

13

*Henderson v. Duncan,* 779 F.2d 1421 ................................................................... 32

14

*Herandez v. City of El Monte,* 138 F.3d 393, 399 (9th Cir. 1998) ............... 27, 30, 32

15

*In re PPA Prods. Liab. Litig.,* 460 F.3d at 1227 ...................................................... 4

16

*Industrial Blding Mater's, Inc. v. Interchem. Corp.,* 437 F.2d 1336 (9th Cir. 1970) 31

17

*Johnson v. Boykin,* 2012 U.S. Dist. LEXIS 181277 (E.D. Cal. 2012) ..................... 31

18

*Malone v. U.S. Portal Service,* 833 F.2d 128, 133 (9th Cir. 1987) .......................... 33

19

*Martinez v. Cty. of Riverside Sheriff,* 2017 U.S.Dist.LEXIS 81509 (C.D.Cal.2017) 32

20

*Milton Greene Archive v. CMG Worldwide* 568 F.Supp. 2d 1152 (C.D.Cal.2008) .24

21

*Mulbah v. Detroid Bd. of Educ.,* 261 F.3d 586 (6th Cir. 2001) ............................... 26

22

*Nealey v. Transport Maritima Mexicana, S. A.,* 662 F.2d 1275 (9th Cir. 1980). 26, 31

23

*Reizakis v. Loy,* 490 F.2d 1132 (4th Cir. 1974) ..................................................... 31

24

*Reyes v. Radcliff,* 2015 U.S. Dist. LEXIS 70029 (E.D. Cal. 2015) .......................... 33

25

*Von Poppenheim v. Portland Boxing & Wrestling,* 442 F.2d 1047 (9th Cir. 1971) .25

*Yourish v. California Amplifier,* 191 F.3d 983 (9th Cir. 1999) ........................... 25, 27

26

**Rules**

27

Fed. R. Civ. Pro. R. 60(b)(6) ................................................................................. 24

28

ADLI LAW GROUP, PC

www.adlilaw.com

(213) 623-6546

ii

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

Fed. R. Civ. Pro. R. 26(f) ................................................................................. 2

Fed. R. Civ. Pro. R. 41 ....................................................................................24

C.D. Cal. Local Rule 7-18 ...............................................................................23

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

iii

1659.202

# I.   __INTRODUCTION__

The Court:  I don't think this case is ready for trial

Plaintiff's Counsel:  Your honor; we are ready for trial; it is Defendant's counsel who is not.

……..

The Court:   Mr. Spellerberg…you will not go radio silent again…

That was the exchange between the Court and counsel on August 29, 2016, the hearing subsequent to Plaintiff having to submit a unilateral Final Pretrial Conference Order because Defendants' counsel had inexplicably gone "radio silent."  Defendant's counsel's practice of going "radio silent" until the last possible minute of the Court ordered deadlines - placing Plaintiffs in a "Catch-22" by failing to participate in joint submissions, complaining when Plaintiffs unilaterally file the required submissions, and then blaming all that on Plaintiff - has not changed since the date of the above exchange.  In fact, Defense counsel's underhanded "strategies" have been employed since the start of this litigation.

More than a year later, the following exchange with the Court at the last hearing is telling:

Mr. Adli:  your honor.  We have been ready for trial for over a year and we are ready for the Court to set a trial date today…

….

All the pre-trial documents are on file, the parties are before the Court, we need to have a trial date today…

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

1

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

1    Rule 41(b) is a shield for the defendant, not a sword.  Rule 41's function is to

2    penalize those whose conduct warrants harsh sanctions and deter those who might be

3    tempted to such conduct.  *Allen v. Bayer Corp. (In re : Phenylpropanolamine ( PPA)*

4    *Prods. Liab. Litig.)*, 460 F.3d 1217, 1227 (9th Cir. 2006).  When a defendant's own

5    conduct or incompetence prohibits or is a substantial factor in preventing plaintiff

6    from complying with the Federal Rules of Civil Procedure or a court order, the

7    implementation of Rule 41(b) becomes that which it is not: a sword.   Indeed, a party

8    suffers prejudice if its opponent's actions "impair [its] ability to go to trial or threaten

9    to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren,* 913

10   F.2d 1406, 1412 (9th Cir. 1990).

11   Defendants' thinly disguised strategy from the beginning has been to hamper,

12   hinder and even prevent the Plaintiffs at every turn.  Unsurprisingly, from the

13   beginning, Defendants displayed a persistent pattern of delay and were outright

14   evasive with Plaintiffs leading up to each joint PTCO filing.

15   The Defendants' dilatory tactics, pushing the bounds of professional ethics,

16   were deployed almost immediately with the commencement of this action, when

17   Defendants failed to answer the Complaint, leading Plaintiffs to request entry of

18   default.  Then they wasted as much time as they could get away with to amend their

19   counterclaims, finally being forced to do so by a sustained motion to dismiss even

20   though they had promised to voluntarily amend their counterclaims. Next, was

21   Defendants' failure to participate in the Rule 26(f) Report drafting, along with the

22   service of their initial disclosures being so late that it prevented Plaintiffs from

23   amending the Complaint as the deadline to amend had just passed.

24   The next episode concerned Defendants' failure to respond to Plaintiffs' request

25   for the pre-trial meet and confer, thereby forcing Plaintiffs to file a unilateral PTCO,

26   to which Defendants objected in feigned consternation.  Defendants then failed to file

27   an *ex parte* motion to continue pre-trial dates even though, once again, they had

28

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

1   promised to do so.  Subsequently, Defendants went "radio silent" regarding joint
2   stipulated trial dates the parties were ordered to provide this Court.  Then came an
3   "inadvertent" late filing of the Defendants' Memorandum of Contentions of Law and
4   Fact (hereinafter "Memorandum") at the end of 2016. Next up was Defense counsel's
5   excuse of being out of town for the Holidays and coming down with the flu that lasted
6   for three weeks in December - January. This was coupled with his assurances, once
7   more, that he would file *ex parte* for a continuance, which was never done.  Then
8   there was Defendants' failure to propound discovery requests on Plaintiffs, thereby
9   causing Defendants to file an unsuccessful motion to continue trial dates and extend
10  discovery cutoff.  Related to Defendants' failure to propound discovery, Defendants
11  also were not timely in responding to discovery.

12      In sum, Defendants have repeatedly failed to observe common professionalism
13  and this Court's requirements with their tactics on pre-trial matters which repeatedly
14  place Plaintiffs in a "Catch-22".  Moreover, throughout the initial two-thirds of the
15  litigation, Defendants' counsel constantly requested settlement dialogues with
16  Plaintiffs' counsel, yet, never followed through with his requests (See Declarations of
17  Drew H. Sherman "Dec. of Sherman" ¶4 and Dariush G. Adli "Dec of Adli").  These
18  tactics have not stopped even through the dismissal this motion seeks to overturn.  At
19  the time of this pleading, Defendants' counsel is attempting chicanery with the joint
20  status conference report that this Court ordered him to file on October 16, 2017.

21      Most of these events were used by Defense counsel to excuse himself – for over
22  a week at a time – during the critical stages of the parties' first two attempts at
23  preparing and filing the joint PTCO so as to get to trial.  Other of these events were
24  simply used by Defendants and their counsel to bide time, harass the Plaintiffs, or
25  mask their weak defenses and counterclaims with gamesmanship.

26      Even when there was not a new excuse checked off the list, Defendants'
27  counsel consistently displayed a habit of delaying just long enough to force Plaintiffs'

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

28

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

1  hand, then loudly complaining and objecting to Plaintiffs' action.  Defense counsel's
2  lack of candor and seemingly calculated evasive maneuvers prejudiced Plaintiffs as
3  Defendants conduct was the main cause of missed deadlines, repeated delays and
4  extensions, and finally dismissal of Plaintiff's case.   Yet, when juxtaposed with
5  Plaintiffs' attempts to move this case to trial, it is abundantly clear that the dismissal
6  of the Complaint is a miscarriage of justice as it was the Defendants who was
7  attempting to force this Court's proverbial hand to use Rule 41(b) as a sword, not a
8  shield.

9      A dismissal under Rule 41(b) will set a precedent that a defendant can get a
10  case dismissed by simply sabotaging a plaintiff's case through delays and evasive
11  tactics.  Rule 41 is supposed to protect the defendant from a plaintiff that is merely
12  trying to harass the defendant with a law suit – it is not to be used as a get-out-of-jail-
13  free card.  A party suffers prejudice if its opponent's actions "impair [its] ability to go
14  to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l*
15  *Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  *See also In re PPA Prods.*
16  *Liab. Litig.*, 460 F.3d at 1227 (noting that Rule 41(b) exists not only "to penalize those
17  whose conduct may be deemed to warrant such a sanction, but to deter those who
18  might be tempted to such conduct in the absence of such a deterrent").
19  Reconsideration is not only proper, but necessary to cure the significant prejudice that
20  has come upon Plaintiffs.  By allowing this case to be dismissed, this Court is ruling
21  contrary to the principles of Rule 41.

22      **II.    SUMMARY OF DEFENDANTS' DILATORY CONDUCT**

23      This case was originally filed on July 24, 2015, and immediately the
24  Defendants took a course conduct, which has continued throughout the litigation.
25  Judge Morrow, the initial judge on this case, set the scheduling order in chambers,
26  without a scheduling conference, and had, *inter alia*, discovery cutoff set for June 3,
27  2016, a Final Pretrial Conference set for September 2016, and trial set for October 11,
28

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

1 2016 (See Dkt. No. 69).   This Court initially adopted the schedule set by Judge

2 Morrrow (See Dkt. No. 76).

3   **A. <u>Unnecessary Motions To Dismiss Counterclaims</u>**

4   Plaintiffs served the Complaint on all Defendants within the last five (5) days

5 of July 2015 (See Dkt. Nos. 12-17).  Defendants' counsel first reached out to Plaintiffs'

6 counsel on August 13, 2015, which meant on that day, Defendants had between 6 and

7 8 days to respond to the Complaint, as applicable to the respective Defendants (See

8 Dec. of Sherman ¶5).  It only took Defense counsel's first email communication to

9 begin his habit and practice of purposefully misquoting and misattributing promises

10 and statements to Plaintiffs and their counsel (See Dec. of Sherman ¶6-9).  As well,

11 Defendants began to employ excuses to stall and push off deadlines, such as claiming

12 an emergency commercial eviction that needed Defendants' counsel's attention to

13 extend the time to answer the Complaint until the first week in September;

14 approximately 2 weeks after they were initially due (See Dec, of Sherman ¶6-9).  In

15 good faith, Plaintiffs' agreed and allowed Defendants to file their Answers and

16 Counterclaims by August 31, 2015.

17   Defendants' initial filings were a spectacle on their own and seem to indicate

18 that their lawyer had never practiced in Federal Court.  But Defendants tried to use

19 this rookie-lawyer act to their advantage by catching Plaintiffs in a default position

20 for the Counterclaims.  After a few rounds of deficient filings and improper pleadings,

21 Defendants filed and served the appropriate answers and counterclaims on September

22 21, 2015 (1 month after their original responses were due).  As such, Plaintiffs needed

23 to respond to the Counterclaims by October 12, 2015.   Indeed, when Plaintiffs'

24 counsel initiated the meet and confer on Plaintiffs' proposed motions to dismiss

25 Defendants' counterclaims, Defendants' counsel stated that Defendants would be

26 amending the Counterclaims so as to avoid unneeded motion practice (See Dec. of

27 Sherman ¶10).   However, Defendants never amended their Counterclaims even

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

though it had been represented by Defendants' counsel that the amended Counterclaims had been approved and were ready to be filed (See Dec. of Sherman ¶11).  More than a month went by of promises to amend, but then Defendants' counsel went "radio-silent" and Plaintiffs were unsure as to what course of action Defendants were going to take.  At this point, Plaintiffs were technically in default territory on the Counterclaims since Defendants had not amended the Counterclaims, nor had Plaintiffs responded to the Counterclaims.  As such, Plaintiffs were left with no choice but to file their motions to dismiss the Defendants Counterclaims on November 23, 2015 (nearly 45 days after Defendants' counsel had originally promised to amend the Counterclaims), even though all parties had agreed such a motion was unnecessary given that Defendants had promised multiple times to amend (See Dkt. No. 66).

Defendants wasted the Parties and this Court's resources even further during the oral argument on the Plaintiffs' motions to dismiss the Counterclaims.  On the day set for hearing of Plaintiffs' motions (2/22/16 because of the case being transferred from Judge Morrow), Plaintiffs' counsel and Defendants' counsel, both of whom were driving from L.A. to Orange County, were set to argue as the last matter on the Court's docket.  The Court had issued a tentative ruling granting Plaintiffs' motions (See Dkt. No. 80), and, since Defendants had previously promised to amend the Counterclaims, Plaintiffs' counsel requested Defendants submit on the tentative so the lawyers could get back to work (See Dec. of Sherman ¶12-13).  Yet, Defendants' counsel did not want to submit on the tentative ruling and requested to participate in oral argument. After waiting in Court for four hours for their turn, Plaintiffs' motions to dismiss were called before this Court.   But, even with four hours waiting in the courtroom, Defendants' counsel was so unprepared that when he argued the first point of the motion, he did it so poorly that he submitted on the tentative to the balance of the motions after one minute of oral argument (See Dkt. No. 80).  Defense counsel's lack of preparation and ego wasted four hours of time and money on Plaintiffs' lawyers,

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

1   made this Court stay on the bench longer than it needed to, and wasted four hours'

2   worth of his own clients' resources.

3   **B.  Lack Of Participation In The Rule 26f Report**

4   During the time that Plaintiffs were waiting for Defendants' counsel to amend

5   the Counterclaims, as he had represented they would do, the Parties were also required

6   to meet and confer for the Rule 26f joint scheduling conference report; due to be filed

7   by November 20, 2015 (See Dkt. No. 59).  Though the Parties' counsels did meet and

8   confer on November 10, 2015, thereafter, as stated above, Defendants' counsel went

9   "radio-silent" and would not contribute Defendants' portions of the Rule 26f report

10   (See Dkt. No. 65-1).  As the deadline was upon the Parties to file the Rule 26f Report,

11   with no communications from Defendants' counsel, Plaintiffs' had to file a unilateral

12   Rule 26(f) Report with Defendants' portions missing (See Dkt. Nos. 65 and 65-1).

13   Very soon after Plaintiffs filed their portions of the Rule 26f Report, Defendants

14   resurfaced after an extensive period of having gone "radio silent" and filed their

15   portions (See Dkt. No. 67).

16   This was the first instance, with many more to come, of Defendants' counsel

17   blatant gamesmanship with the Court's deadlines by forcing Plaintiffs to play chicken

18   with pleadings: either filing without Defendants' counsel's input, or waiting for

19   Defendants' counsel's input and review of the pleadings and filing late.  Neither option

20   was to the satisfaction of this Court.

21   **C.  Late Served Initial Disclosures**

22   Defendants' malfeasance, and that of their counsel, in causing delay after delay,

23   taking a do-nothing approach to the litigation, and causing Plaintiffs to miss deadlines

24   by stalling was pervasive throughout the litigation.  This strategy even carried into the

25   timing of the service of their initial disclosures.

26   According to the scheduling order from Judge Morrow, initial disclosures were

27   due by December 14, 2015 (See Dkt. No. 69).  Plaintiffs timely served their initial

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

7

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

disclosures, but Defendants, in blatant disregard of the local and Federal rules, did not serve their disclosures until January 12, 2016 (See Dec. of Sherman ¶14-15).   But, when the Defendants date of service of their initial disclosures are overlaid with Judge Morrow's scheduling order, Defendants' nefarious intent becomes clear and the late served disclosures falls in place with their overall theme to use Rule 41(b) as a sword, rather than a shield.

According to Judge Morrow's original scheduling order, the last day to amend the pleadings to add causes of action or new parties was January 11, 2016 (See Dkt. No. 69).   Defendants' disclosures list witnesses that Plaintiff now believes assisted Defendants with their bad acts, and the documents listed by Defendants in their initial disclosures seem to indicate Defendants engaged in other bad acts which would allow new causes of action.  *Thus, Defendants intended to serve their initial disclosures 30 days late to prevent Plaintiffs from making the witnesses listed in the disclosures defendants in this action.*  Additionally, the late served disclosures also prevented the Plaintiffs from adding new causes of action which were made clear by the Defendants' disclosures.  What's more, the Defendants late disclosures would have contributed to their plan to use Rule 41(b) as a sword, and not a shield, as the Plaintiffs would have been perceived as dilatory, transgressing the Court's orders, and unprepared if Plaintiffs had attempted to make a motion to modify the scheduling order so as to amend the Complaint to add witnesses and/or new causes of action.

**D. <u>Defendants' Dilatory Discovery As Failure To Prosecute</u>**

The next phase of Defendants' plan to manipulate the system was manifested in their failure to propound any discovery until discovery was just about to close. When Plaintiffs informed Defendants' counsel that the discovery requests he had made were untimely in that they would require responses ***after*** close of discovery, Defendants then noticed depositions of Plaintiffs with requests for production on less than 30 days' notice; a clearly improper and impermissible tactic.  Even though

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

Defendants' counsel knew this to be an improper attempt to circumvent the Federal Rules regarding discovery, Defendants engaged in this chicanery regardless forcing Plaintiffs to have to seek a protective order (See Dkt. No. 83). Once again, Defendants and their counsel causing unnecessary motion practice for the Plaintiffs and this Court because of their attempt to skirt the rules of procedure.

Subsequently, when the Defendants realized they wouldn't get any documents produced by Plaintiffs, just oral discovery, Defendants moved this Court to continue the trial dates and reopen discovery (See Dkt. No. 89). This again evidences Defendants dilatory intent to push off the trial as far as possible and do as little as possible to prosecute their portions of the case. Unfortunately, Defendants motion made reference to ***Plaintiffs'*** purported discovery needs as part of the reasoning why this Court should have continued the trial dates and re-opened discovery (See Dkt. No. 89 pg. 9:12-22). The net effect of Defendants frivolous motion to remedy self-inflicted wounds (not propounding any discovery until after discovery closed) was that it had the effect on the perception of this Court of making both Parties seem dilatory and unprepared for trial. But, as Plaintiff's lead counsel informed the Court at the August 29, 2016 final pre-trial conference, "***Plaintiff [was] ready to proceed to trial***."

Further, even though Defendants never propounded any discovery on Plaintiffs during this Court's scheduled discovery period, and, even though Plaintiffs properly disclosed the documents it intended to rely on during trial, in strict compliance with the Rules of Procedure, Defendants made a motion *in limine* to exclude documents ***that they themselves never requested in discovery*** (See Dkt. Nos. 111, 121, 134). Yet, because the Defendants tried to make it seem as though Plaintiffs were prohibiting Defendants from taking discovery, though no requests had been propounded by Defendants, this Court fell victim to the Defendants con regarding lack of discovery. In ruling on the Defendants' third try at motion in *limine* #1, after

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

9

1659.202

1  Defendants finally complied with proper procedure, this Court excluded Plaintiff's

2  documentary evidence from trial (See Dkt. No. 160).  This Court bought Defendants

3  argument that Plaintiffs withheld documents from Defendants, allowing for a

4  sanction, even with a declaration from Plaintiffs' counsel to the contrary, even when

5  Defendants failed to propound the discovery that would have provided such

6  documents, and even when the Defendants themselves held the documents evidencing

7  Plaintiff's damages.

8      Furthermore, not more than 60 days prior to the time of filing all three of its

9  attempts at MIL#1, Defendants made a motion to continue the trial and reopen

10  discovery.  Yet, in each of the MIL#1s the Defendants filed, the Defendants argue

11  that it would be prejudicial for this Court to continue the trial dates and reopen

12  discovery (See Dkt. No. 121 Section E and Dkt. No. 134 Section E).  Obviously,

13  Defendants have no qualms about making the argument that suits them even at the

14  expense of their credibility.  Moreover, Plaintiffs reasonably relied on Defendants

15  representations to the Court. As well, Defendants failure to conduct discovery and

16  then attempt procedurally improper discovery right before the discovery period was

17  about to close further delayed this trial the with unnecessary motion practice on both

18  sides, when all parties could have gone to pre-trial right away.

19      **E. <u>Failure To Meet And Confer And Misrepresentations</u>**

20      However, even if the Parties had gone to the pre-trial stage of the litigation,

21  Defendants' plan was to cause delay and stall the litigation at that stage too.  With the

22  initial scheduling order from Judge Morrow as the operative schedule for the case at

23  the end of summer and beginning of fall 2016, the pre-trial meet and confer, according

24  to the Central District's Local Rules, required the Parties meet and confer no later than

25  the second week of August 2016 on pre-trial matters.

26      Thus, Plaintiffs' counsel reached out to Defendants' counsel to schedule the

27  meet and confer (See Dec. of Sherman ¶16-18).  Defendants' counsel responded three

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

10

1659.202

1    (3) days later and acknowledged the need to meet and confer (See Dec. of Sherman

2    ¶16-18).   Upon an attempt by Plaintiffs' counsel to secure a date for the meet and

3    confer, Defendants' counsel went "radio silent" again for another four (4) days.  When

4    Defendants counsel resurfaced, he brought with him some unfortunate news; his

5    mother in law had passed away[1].

6          Because of the unfortunate event, Defense counsel requested a stipulation to

7    continue all dates, including trial (See Dec. of Sherman ¶19-20).  While, Plaintiffs

8    wanted to be accommodating, continuing the trial was not an option.   However,

9    continuing the pre-trial dates were something Plaintiffs were willing to offer (See Dec.

10   of Sherman ¶21).  What Plaintiffs did offer was for Defendants to move *ex parte* for

11   a continuance and, depending on what was being asked to continue, Plaintiffs would

12   possibly stipulate or not oppose (See Dec. of Sherman ¶21).   Nevertheless, time was

13   of the essence as pre-trial filings were coming due, such as the motions *in limine*.

14   Defendants' counsel agreed to the *ex parte*, but then Defendants' counsel never got

15   back to Plaintiffs' counsel regarding the *ex parte* topics (See Dec. of Sherman ¶22).

16   Finally, Plaintiffs had no choice but to file their motions *in limine* (See Dkt. Nos. 107-

17   110).

18          Five days later, Defendants' finally responded to Plaintiffs' counsel's inquiries

19   regarding the pre-trial meet and confer and the *ex parte* (See Dec. of Sherman ¶23-

20   27).   Defendants' counsel stated that he was going to file an *ex parte* motion for a

21   continuance of the whole action, including the trial (See Dec. of Sherman ¶23-27). As

22   the next filing due was the memorandum of contentions of law and fact, and the

23   Plaintiffs had still not heard from the Defendants at all, Plaintiffs' counsel sent a

24   communication to this Court's clerk inquiring as to what should be done since

25   _____

26   [1] Plaintiffs' counsel later came upon the information that Defendants' counsel's mother in law had
     not passed away the day that Plaintiffs' counsel was informed by Defendants' counsel.  Rather, in
27   truth, Defendants' counsel's mother in law was his friend's mother, not his wife's mother, and the
     mother had passed away several months prior to the date of the email from Defendants' counsel (See
28   Dec. of Sherman ¶19).

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

11

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

1    Defendants' counsel was not communicating (See Dec. of Sherman ¶23-27).  Finally,

2    Defendants' counsel restarted communication by sending a communication to this

3    Court's clerk too.   However, the substance of the emails by Defendants' counsel

4    indicated continued gamesmanship as they included fabrication, misquotes, and

5    twisting of words (See Dec. of Sherman ¶23-27).  Defendants' counsel also disputed

6    the facts that led to the discussion with the Court's clerk (See Dec. of Sherman ¶23-

7    27).

8         The Court ordered the parties to have a telephonic status conference on August

9    29, 2016 (See Dkt No. 114).  During the status conference, the Court vacated the then

10   set trial dates and ordered the parties to propose three different trial schedules from

11   each party.  Then this Court stated it would pick the schedule that fit its trial calendar

12   the best.  The Parties filed their respective trial schedule options on September 7, 2016

13   See Dkt. No. 115).  Plaintiff's three options had the earliest trial date on November

14   28, 2016 and the latest trial date requested for Dec 12, 2016.  Defendants, on the other

15   hand, with their intentions to delay, delay, delay, as has been evidence by their

16   conduct from day 1, requested the earliest trial date of January 16, 2017 and the latest

17   requested date of June 26, 2017 (nearly a year after the status conference).  Once

18   again, Defendants were using every excuse under the sun to delay and stall this case.

19        Following a status conference hearing on August 29, 2016, during which

20   Plaintiff insisted that "it was ready for trial," the Court nonetheless vacated the pretrial

21   and trial dates, and on October 18, 2016 ordered the Parties to a Final Pretrial

22   Scheduling Conference that was to take place on December 12, 2016. (Dkt. 116, p.

23   3).  This was the first of many "life lines" the Court provided to accommodate the

24   Defendants.

25        **F. December 12, 2016 – First Pre-Trial Conference Order Due Date**

26        In the weeks leading up to the December 12th deadline, Plaintiffs' counsel

27   made numerous attempts to reach Jeff Spellerberg, Defendants' counsel, and meet

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

1  and confer with him on the points and authorities to be included in the Final Pretrial

2  Conference Order ("PTCO").  But, with few precious exceptions, Plaintiffs' counsel

3  was stonewalled and ignored.  In fact, Defendants' counsel filed Defendants' four

4  motions in limine on November 14, 2016.  Though, as had been the Defendants'

5  *modus operandi*, Mr. Spellerberg again failed to meet and confer on the MILs, and,

6  as such, they were struck by this Court on November 18, 2016 for, again, failure to

7  comply with the rules (See Dkt. No. 123).

8      On November 21, 2016, Plaintiffs filed their version of the Memorandum of

9  Contentions of Law and Fact.  On December 2, 2016, after yet another bout of "radio

10  silence" with a joint filing deadline fast approaching (this episode lasting weeks),

11  Plaintiffs had no choice but to file a unilateral PTCO to comply with the Court's order.

12  (See Dkt. 131).  This filing was accompanied by a declaration from Drew Sherman

13  explaining how Mr. Spellerberg had been unresponsive to emails and phone calls

14  since November 18, 2106. (See Dkt. 131-1).  Defendants did not file their first version

15  of Memorandum of Contentions of Law and Fact ("Memorandum") until December

16  9, 2016, which was accompanied with the following excuse from Mr. Spellerberg:

17  "The attached Memorandum was prepared to be filed on November 21, 2016, and I

18  thought it I had filed it, but had not… The mistake was entirely mine as [sic] did not

19  notice my error until now." (See Dkt. 132-1, 2:7-9).

20      At the continued Final Pre-trial Scheduling Conference on December 12, 2016,

21  under the stipulation and order of October 18, 2016 (Dkt. No. 116), Plaintiffs' counsel

22  repeatedly represented to the Court that ***Plaintiffs were ready and able to move***

23  ***forward with the trial*** scheduled to be commenced on January 17, 2017 and justice

24  for the Plaintiffs so required (See Ex I to Dec. of Sherman: Court's Transcript of

25  12/12/16 hearing pg. 5:17-18).  Faced with its own dilatory tactics, including late

26  filings, late disclosures, failure to meet and confer, failure to propound discovery, and

27  lack of pre-trial documents, of course, Defendants' counsel chose to spread the blame

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

13

1659.202

and proclaim that ***all the parties*** were not ready for trial (See Ex. I to Dec. of Sherman: Court's Transcript of 12/12/16 hearing pg. 3:16-17).   And because Defendants' counsel had not participated in the pre-trial conference when he went "radio silent," there were no ***joint*** pre-trial documents for this Court, thereby causing this Court to have all trial dates taken off calendar (See Dkt. No. 137; See Ex. I to Dec. of Sherman: Court's Transcript of 12/12/16 hearing pg. 7:4 through pg. 8:16). Thereafter the Parties were instructed to meet and confer for the pre-trial and follow the local rules for the pre-trial conference requirements.  To ensure no one went "radio silent" a telephonic status conference was set by this Court for the following week (See Ex. I of Dec. of Sherman: Court's Transcript of 12/12/16 hearing pg. 22:11-25).

Additionally, on December 12, 2016, Defendants re-filed three of their MILs which had been struck on November 18, 2016 for failing to meet and confer (See Dkt. Nos. 133-135).  ***The Court admonished Defendants for these filings, however, as being untimely and reminded Defendants' counsel that he had caused this Court to continue trial dates in this case once before*** (See Ex. I to Dec. of Sherman: Court's Transcript of 12/12/16 hearing pg. 3:18-22 and pg. 5:1-8).  As well, the Court also admonished Defendants' counsel for filing oppositions which were due to the Court over three weeks prior to the then current hearing (See Ex. I to Dec. of Sherman: Court's Transcript of 12/12/16 hearing pg. 18:17-25).   But Defendants' counsel got exactly the life line it had sought as the trial dates were further continued without end in sight for the Plaintiffs, who felt frustrated and helpless in the face of continued "life lines' this Court provided Defendants.  This put Plaintiffs in the proverbial position of "justice delayed is justice denied"

### G. <u>December 19, 2016 Status Conference</u>

Though the Parties were instructed at the previous hearing of December 12, 2016 to meet and confer on "joint pre-trial documents," as late as December 18, 2016 (the day before the status conference), Defense counsel was still working on revising

ADLI LAW GROUP, PC<br>www.adlilaw.com<br>(213) 623-6546

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

the Defendants' Memorandum of Contentions of Law and Facts.  In an email, he wrote: "I am now working on revising my party's Contentions of Law and Fact, which should be used to create a new Final Trial Setting Order" (See Dec. of Sherman ¶34-35).  Mr. Spellerberg showed his "ignorance" of the Rules – or revealed his dilatory strategy – by stating the following: "***Finally, why are you in a rush?  None of this is timely until Judge Selna rules on the final Motions in Limine, which should very likely wipe out all of Plaintiff's damages, and then we'll have to go through the entire trial setting order exercise again***."  (See Dec. of Sherman ¶34-35).

On December 19, 2016, the Court addressed Defendants' obfuscating of the PTCO and the procedurally deficient MIL ***by continuing the trial dates in this case for a second time at the behest of the Defendants*** (See Dkt. No. 139).   The continuance took place against Plaintiffs' counsel's reminder that Plaintiffs were ready for trial, and had been ready for trial for some time.  (See Ex. J to Dec. of Sherman: Court's Transcript of 12/19/16 Status Conference pg. 8:7:8:16).  By this point, the trial had been delayed twice.  This Court further ordered the Joint PTCO to be filed by January 17, 2017 with each side filing a declaration of compliance with the Local Rules regarding their obligations for pretrial preparations.

Specifically, one area relating to the PTCO this Court wanted the Parties to follow was the requirement that the Defendants be allowed to review the PTCO ***before*** it is lodged by Plaintiff, as Defendants counsel made it a point to the Court that Plaintiffs had filed the previous one without his review (Ex. J to Dec. of Sherman: Court's Transcript of 12/19/16 Status Conference pg. 9:15-22).  The ridiculousness of Defense counsel's argument was that he was "still drafting" the Defendants' memorandum of contentions of law and fact and would not participate in the PTCO. This required Plaintiffs to file without Defense counsel's review; he would not agree to it until the Defendants' contentions of law and fact had been finished and

1659.202

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1  incorporated.  In other words, *once again Defendants' counsel was the cause of the*
2  *very action he was complaining of* (See Dec. of Sherman ¶34-35).

3     The Court also continued the Pre-Trial Conference again to January 23, 2017
4  to allow Defendants' their third attempt to file and serve their MILs #1 and 2 in
5  compliance with the Rules of Procedure[2].  Once again, Defense counsel's own conduct
6  forced Plaintiffs to take action in an attempt to comply with the rules, which then led
7  Defense counsel to complain to this Court that Plaintiffs were not following
8  procedure.  As well, the Defendants' strategy was continuing to work; delay, delay,
9  delay.

10    **H. January 17, 2017 – Second Pretrial Conference Order Filing**

11       Following the Court's order, Plaintiffs' counsel continued to engage in
12  numerous efforts to meet and confer with Defense Counsel in order to avoid any
13  unilateral filings, but continued to be stonewalled at every possible turn.    On
14  December 27th, 28th, and 30th, Plaintiffs' counsel and paralegal repeatedly reached
15  out to Defense counsel to meet and confer for the joint PTCO. (See Dkt. 144-3, ¶¶6-
16  8). Mr. Spellerberg did not respond until January 2, 2017, whereby he stated he was
17  unavailable until January 5. (See Dkt. 144-3, ¶9).  At that time, Mr. Spellerberg also
18  informed Plaintiffs that he had finished a new, revised Memorandum and would be
19  sending it soon. (Dkt. 144-3 ¶10).

20       Mr. Spellerberg in fact did not come out of hibernation until January 9 and did
21  not update Plaintiffs until January 11, when he sent an email apologizing for not
22  showing up and stating that he would be sending his revised Memorandum by 1pm
23  that day.  (Dkt. 144-3, ¶¶21-23). However, Mr. Spellerberg did *not* send the promised
24  revised Memorandum by January 11th.  *Mr. Spellerberg then assured Plaintiffs that*
25  *he would move ex parte on January 16* for a continuance of the Final Pretrial
26  *Conference*. (Dkt. 144-3, pp. 34-35; ¶27).  This was just enough to lull Plaintiffs into
27
28  [2] Late filed and improperly filed motions *in limine* became Defense counsel's hallmark in this litigation as it continued through the date of this pleading (See Dkt Nos. 191-195).

1659.202

a false sense of security while Mr. Spellerberg continued his delay under the guise of his intent to move *ex parte*.

After it became evident that Mr. Spellerberg would not move for the promised continuance, on January 16 at 7:30am, Dariush Adli, lead counsel for Plaintiffs, emailed Mr. Spellerberg reminding him of the important due date of January 17 and offering assistance with finalizing all of his documents for the PTCO.  The e-mail stated that Plaintiffs are available anytime, any day, basically around the clock to accomplish what the Court has ordered. (Dkt. 144-3, p.41; ¶31).  *Mr. Spellerberg did not reply until 2:56pm* **the day the joint filing was due**, *with a little over three (3) hours until the close of business, where he explained that he was* **"not quite done on the Pre-Trial Conference order document" and that he would contact Plaintiffs in "a few hours."** (Dkt. 144-3, p.42; ¶32).  Plaintiffs' counsel did not receive any documents, but Mr. Spellerberg informed Plaintiffs' counsel that he was making "massive revisions" to his revised Memorandum.  The last statement Mr. Spellerberg put on this Court's record regarding the Defendants' Memorandum of contentions of Law and Fact was that the Defendants would be ***withdrawing numerous causes of action*** (See Ex. J to Dec. of Sherman: Court's Transcript of 12/19/16 Status Conference p. 6:17-25).

On January 17, at 11:22am, Plaintiffs again emailed Mr. Spellerberg urging his compliance. (Dkt. 144-3, p.44).  Plaintiffs could not prepare a Joint PTCO in good faith because Plaintiffs had no idea what Mr. Spellerberg's "massive revisions" included.  *Again, in the effort to avoid any further unilateral filings, Plaintiffs' counsel relented and waited, even waiting past the deadline by the Court so as to not file a unilateral pleading again* (See Dec. of Sherman ¶36).  Knowing full well that that the Joint PTCO was due on January 17, 2017, Mr. Spellerberg avoided contact with Plaintiffs and prevented a timely preparation and filing.  **Mr. Spellerberg waited until**

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

1  ***January 18, 2017 at 10:57AM – a full day after the deadline – to contact Plaintiffs***
2  ***about a meet and confer for the joint PTCO***. (Dkt. 144-3, p. 45).

3       After failure to file a joint PTCO and declarations by January 17, 2017, this
4  Court vacated all dates and removed the action from the active caseload. (See Dkt.
5  143).  As before, Defendants and their counsel found their strategy, of intentionally
6  causing the Plaintiffs' transgressions of the rules of procedure and this Court's orders
7  that the Defendants would later complain about to this Court, effective as the trial
8  dates were, once more, taken off calendar by this Court.  Once again, the Court had
9  thrown Defendants the proverbial "life line".

10  ## I.  <u>March 30, 2017 – Third Pretrial Conference Order Filing</u>

11       Plaintiffs filed a motion for relief on this ruling, which was denied (See Dkt.
12  No. 156).  However, ultimately, this Court provided a path for the Plaintiffs get this
13  case back on the active roster (See Dkt. No. 156).  The Court directed the Parties to
14  meet at the Courthouse every Thursday from 9am to noon to work on the pretrial
15  document preparation.  On March 9, 2017, the Court ordered that the Parties complete
16  and file everything by March 30, 2017 (See Dkt. No. 161). Importantly, during this
17  hearing, the Court admonished Mr. Spellerberg as follows:

19       "I expect you to allow each other sufficient time to review each other's
20       proposals so that we don't literally have an 11th hour or a 12th hour filing as
21       was the case last night and this morning. That means that you both have to
22       make yourselves available and respond to the other sides' proposed
       submissions. ***Is that clear, Mr. Spellerberg?***"

23  (See Ex. K to Dec. of Sherman: Court's Transcript of 3/9/17 pg. 13:1-13:7).  On March
24  29, 2017 at 4:36pm[3], the day before the Court ordered deadline that the joint PTCO

---

[3] Plaintiffs note that this time represents the timestamp that Mr. Spellerberg filed the document – it does not represent the "Court ordered deadline."

18

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

needed to be filed, Mr. Spellerberg finally filed his revised Memorandum that he had been "working on" since December 18 (See Dkt. No. 164).

Ultimately, after a string of updates, on March 29, 2017, at 6:44 p.m., Plaintiffs' counsel informed Defense counsel that Plaintiffs would be cutting and pasting the relevant portions from the Defendants' Amended Memorandum of Contentions of Law and Fact into the PTCO, emailing him again at 7:39 p.m. to update him on the status (See Dkt. No. 175-1 at ¶¶ 27-29).   On March 30, 2017, Plaintiffs filed the revised PTCO (See Dkt. No. 167).   The same day, the Court held a status conference and again admonished Mr. Spellerberg as follows:

> "THE COURT: Sir, the time has gone by, more than
> gone by. In fact, you kept filing in-limine motions late.
> You repeatedly failed to meet and confer. I ordered them
> off calendar twice, and then on the day of the original
> pretrial conference, you refiled those motions after finally
> having complied with the meet and confer requirement."

(See Ex. L to Dec. of Sherman: Court's Transcript of 3/30/17 pg. 12:6-12:11).

On March 31, 2017, Defendants' counsel filed an objection to the filing of the pre-trial conference order, contending that "the new document was completely altered and that it was impossible to discern what portions of the defendants' Memorandum of Contentions of Law and fact . . . had made it into the 62-page Pre-Trial Conference Order."   Declaration of Jeffrey K. Spellerberg in Support of Defendants' Objection to Filing of Pre-Trial Scheduling Order at ¶ 18 (Dkt. 169).

The pattern and strategy of Defendants and their counsel for this case is quintessentially clear when viewed through the prism of the March 30th filing.  Mr. Spellerberg would push off any portions required from the Defendants to be included in a joint document until the last minute, thereby requiring Plaintiffs to make a decision which would frustrate even King Solomon; a Catch 22 that eventually would be assisted by this Court.

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

19

1    Here, for the March 30 filing, Defendants took so long to provide Plaintiffs
2  with their portions of the Joint PTCO, that Defendants knew Plaintiffs would either:
3  1) have to wait for Defendants portions, and most likely miss the deadline; 2)
4  Plaintiffs would be so cognoscente of the filing deadline, that they would succumb to
5  the pressure of having to wait for Defendants portions that Plaintiffs' would file timely
6  but unilaterally; or 3) file on time but with an incomplete, poor quality pleading.  In
7  any scenario, Defendants could claim innocence and compliance, but benefit from
8  any sanction levied by this Court as any of the three outcomes above would be looked
9  at as less than favorably by this Court.  This is the strategy Defendants have been
10  employing, and the outcomes they have been seeking and achieving since the
11  beginning of this litigation.

12    Even when Defendants were called out by this Court for failure to follow the
13  Rules of Procedure or this Court's orders, they were just given another chance without
14  repercussions.  On March 30, 2017, the Court held a status conference, noting that
15  Defendant had not filed the required declaration of compliance.  But, *rather than
16  sanction Defense counsel for their, approximate, tenth, clear violation of the Court
17  rules and requirements, Mr. Spellerberg was simply given another chance*.  This time,
18  the Court ordered Mr. Spellerberg to file the missing document by the end of the next
19  day.

20    **J.  July 13, 2017 – Fourth Pretrial Conference Order Filing**

21    As the Parties had scheduled a second mediation in this case, per the Court's
22  orders of March 30, 2017, counsel was to file a revised joint PTCO within seven days
23  after the completion of the settlement conference.  (Dkt. 168).  The Court did not
24  separately require the Parties to meet and confer prior to the filing of the revised
25  PTCO.  The mediation took place on July 6, 2017.  The revised PTCO was due July
26  13, 2017.

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

20
PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

The settlement conference was unsuccessful.  On Wednesday, July 12, 2017, Plaintiffs provided Defendants with their updated portion of the PTCO.  Plaintiffs' version had no new matter added – only the removal of certain affirmative defenses. (See Dkt. 185-2, ¶4). With the deadline set for 11:59 pm on July 13, Defendants had the simple task of adding in their revised portions from their Memorandum.  Despite the simplicity of this task, Defendants took over 24 hours to return the updated PTCO to Plaintiffs, which they did at 11:10PM on July 13 (See Dkt. No. 192-1 ¶8-10).  But the version Mr. Spellerberg returned to Plaintiffs, could ***not*** be filed as is since it was covered in Defendants' redline mark-ups (See Dec. of Sherman ¶37-38).   Thus, Defense counsel once again created the situation for Plaintiffs' to miss a deadline

Defendants revisions included adding back in the two previously dismissed counterclaims and the additional of a new affirmative defense of "Anticipatory Breach," which is not in any of Defendants' Answers or pleadings. (See Dkt. 185-2, ¶¶5, 6).   These additions came with the following demand – at 11:10PM – by Mr. Spellerberg:

> "I do not consent to any changes made by you to my comments and inserts, without a full discussion and my express written approval.  If you feel my comments are inappropriate, and you aren't willing to meet and confer, rather than change my text this time, I instead suggest you file it as I've written my parts, and file a declaration with the court stating your opinion."

(Dkt. 185-3, p. 3) (emphasis added).

In light of the Court's previous admonishments to Plaintiffs to file everything timely but to comply with Defendants' right under Rule 16 to see the joint pleading before it was to be filed, Plaintiffs once again found themselves in a Catch 22 caused by Defendants but assisted by this Court.  Plaintiffs did not want to file anything other than a joint PTCO; however, Mr. Spellerberg made it very difficult.  In fact, *Mr.*

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

*Spellerberg sent an updated Proposed PTCO to Plaintiffs at 4:58pm on Friday, July 14, 2017, **with even more changes***. His version served the day of the deadline was not even his final version. By this point, Defendants' proposed changes were late. After working in the revisions, Plaintiffs filed the joint PTCO.

Subsequently, as to complete the circle of Defendants' strategy, Defendants moved to dismiss Plaintiffs' case for their violations of the Court's orders in filing the July Joint PTCO, which was ***substantially due to the Defendants' own actions***. The motion was granted by this Court and the meet and confer dialogue on this motion for reconsideration followed.

### K. Post Script: Defense Counsel's Outrageous Behavior Continues

At the time of drafting this pleading, Defense counsel's behavior of ridiculousness has not ceased. After granting Defendants motion to dismiss, effectively making the Plaintiffs the defendants in this action and the Defendants the plaintiffs, on September 20, 2017 (nearly a month before the due date), this Court ordered a status conference set for October 23, 2017, and a "Joint Status Conference Report" to be filed by October 16, 2017 (See Dkt. No. 201).

Just as when Plaintiffs had the responsibility to file any joint pleadings because they were the parties seeking affirmative relief, with the Status Report, Defendants would bear the responsibility on getting the pleading filed. In true form, Mr. Spellerberg only reached out to Plaintiffs to meet and confer on the Status Report, effectively, the morning of the day in which the Joint Status Report was due to be filed.[4] When Plaintiffs' counsel could not meet Spellerberg's last minute scheduling demands, he became incredulous, unhinged, unprofessional, threatening, and rude (See Dec. of Sherman ¶39-40).

---

[4] Mr. Spellerberg did email Plaintiffs' counsel on Saturday, October 14, 2017, at approximately 8pm (28 hours before the due date) (See Dec. of Sherman ¶39-40). However, Plaintiffs' attorneys were not in the office that night and not in the office or available to address Mr. Spellerberg's madness on Sunday, October 15, 2017 (See Dec. of Sherman ¶39-40). Plaintiffs' counsel only was first able to see Spellerberg's email Monday afternoon.

1659.202

1   The most interesting part of the tirade by Defendants' counsel over the weekend

2   before the Status Report was due, was the fact that Defense counsel was seeking to

3   file the ***wrong type of pleading*** (See Dkt. No. 208).  One of Plaintiffs' counsels, Drew

4   Sherman, reached out to Mr. Spellerberg in the early afternoon of October 16,

5   informing Spellerberg that he would be addressing the required report with Defense

6   counsel. Yet, Spellerberg would not wait to file the report and extend the same

7   courtesy he had been admonishing Plaintiffs about for two years.  Though, the report

8   Defense counsel filed was another PTCO, not a status report.  All the tirades and

9   diatribes by Defense counsel, and it turned out it was all for naught.  But, also true to

10  form, Mr. Spellerberg laid blame on Plaintiffs' counsel for not making sure that his

11  reading comprehension was functioning properly and for not making him listen to

12  Plaintiffs' counsel.

### III.   ARGUMENT

13

14  This Court's dismissal of Plaintiff's claims was done because of a manifest

15  error to consider material facts presented to the Court in that all the delays and

16  violations of this Court's orders were done by the Defendants, caused by the

17  Defendants, or were done out of necessity by the Plaintiff.

18  **A. Legal Authority For Motion For Reconsideration**

19  Pursuant to Local Rule 7-18, a motion for reconsideration may be granted on

20  the grounds of:

21      (a)      a material difference in fact or law from that presented to the Court

22               before such decision that in the exercise of reasonable diligence

23               could not have been known to the party moving for reconsideration

24               at the time of such decision;

25      (b)      the emergence of new material facts or a change of law occurring

26               after the time of such decision, or

27      (c)      a manifest showing of a failure to consider material facts presented

28               to the Court before such decision.

23

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

1        Consistent with this rule, a motion for reconsideration may also be granted if

2    the district court is presented with "newly discovered evidence, committed legal error,

3    or if there is an intervening change in the controlling law." *Carroll v. Nakatani*, 342

4    F.3d 934, 945 (9th Cir. 2003); *see also FDIC v. Countrywide Sec. Corp.* (In re

5    Countrywide Fin. Corp. Mortg. –Backed Sec. Litig.), 966 F. Supp. 2d 1031, 1040

6    (C.D. Cal. 2013); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F.

7    Supp. 2d 1152, 1162 (C.D. Cal. 2008).  Reconsideration may also be granted pursuant

8    to Rule 60 of the Federal Rules of Civil Procedure, which provides the moving party

9    relief on "any . . . reason that justifies relief." Fed. R. Civ. Pro. R. 60(b)(6).

10       In the case at bar, reconsideration of the Court's order granting Defendants'

11   Motion to Dismiss for Lack of Prosecution is appropriate based on manifest error as

12   the Court's order under Rule 41 of the Federal Rules of Civil Procedure ("FRCP")

13   omitted and failed to give appropriate weight to material facts pertaining to the history

14   of this litigation, including, but not limited to, the following:

15       (1) Defense counsel's do-nothing attitude to this litigation and failures to meet

16           the obligations filing required documents, filing required documents on

17           time, and excuses and misrepresentations to this Court as to why trial dates

18           needed to be continued;

19       (2) Defense counsel's consistent disappearances, non-communication, and

20           stone-walling Plaintiffs' counsel when jointly drafted pleading needed to be

21           undertaken as a strategy for litigation to use Rule 41 as a sword and not only

22           as a shield;

23       (3) The Court's previous warnings regarding the dismissal of this action were

24           primarily the result of Defense counsel's failure to cooperate and abide by

25           the Local Rules; and

26

27

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1659.202

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1    (4) Plaintiffs have been ready to take this matter to trial since the time of the

2         original date of the Final Pretrial Conference and should not be punished for

3         Defense counsel's tactics.

4       Based on the foregoing, and as further set forth below, Plaintiffs respectfully

5 request this Court to reconsider the Order dismissing Plaintiffs' claims and reinstate

6 Plaintiffs' case.

7 **B. FRCP 41 Counsels Against Dismissal Of This Action**

8       Under Rule 41 of the Federal Rules of Civil Procedure, a defendant may move

9 to dismiss an action or any claim against it if the plaintiff fails to prosecute its action.

10 The Rule is designed to prevent unnecessary harassment and delay in litigation.

11 *Barger v. Baltimore & O. R. Co.*, 130 F.2d 401, 402 (U.S. App. D.C. 1942)

12 ("Dismissing a case with prejudice . . . is a . . . harsh[] remedy – the death penalty of

13 pleading punishments."). "Dismissal . . . is a harsh penalty and, therefore, it should

14 only be imposed in extreme circumstances." *Cannon Partners, Ltd. v. Cape Cod*

15 *Biolab Corp.*, 225 F.R.D. 247, 251 (N.D. Cal. 2003); *Von Poppenheim v. Portland*

16 *Boxing & Wrestling Com.*, 442 F.2d 1047, 1049 (9th Cir. 1971) ("[A]ggravated

17 circumstances may make dismissal under 41(b) appropriate.").

18       Before ordering a sanction under Rule 41(b), the court must consider five

19 factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's

20 need to manage its docket; (3) the risk of prejudice to the defendants; (4) public policy

21 favoring disposition of cases on their merits; and (5) the availability of less drastic

22 alternatives. *Cannon Partners*, 225 F.R.D. at 251. Each of these five factors is to be

23 weighed by the district court. *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th

24 Cir. 1999). Dismissal will only be deemed proper where four of the five factors

25 support dismissal or three of the factors strongly support dismissal. *Cannon Partners*,

26 225 F.R.D. at 251. "[A]s a general rule, the district court should make explicit

27

28

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

1    findings concerning each factor before dismissing an action for a party's failure to

2    comply with court orders." Id.

3         Under Ninth Circuit precedent, a case should not be dismissed for lack of

4    prosecution without any affirmative showing of prejudice by the defendant. *Nealey*

5    *v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1281 (9th Cir. 1980)

6    ("[W]here a plaintiff has come forth with an excuse for his delay that is anything but

7    frivolous, the burden of production shifts to the defendant to show at least some actual

8    prejudice."). In *Nealey*, the trial court dismissed the action with prejudice in response

9    to a Rule 41 motion to dismiss for lack of prosecution. *Id*. at 1277-78. The defendant

10   contended, among other things, that it had been prejudiced by the passage of time that

11   had elapsed between the time of injury and the time of service upon defendant and

12   further contended that as a result of this delay the route of the vessel at issue in that

13   litigation had changed. *Id*. at 1283. The Ninth Circuit vacated the order of dismissal,

14   holding that this delay was not prejudicial on the defense as the vessel had left only

15   one day before plaintiff had filed his Complaint and was thus not attributable to

16   plaintiff. *Id*. at 1283, 1284.

17        This Court should look to courts around the country and hold fast to the

18   principle that, in a Rule 41 Motion, Plaintiffs should not be punished for the dilatory

19   and gamesmanship tactics of Defense counsel. *Mulbah v. Detroit Bd. of Educ.*, 261

20   F.3d 586, 592 (6th Cir. 2001). In *Mulbah*, the court reviewed a lower court order

21   granting a motion to dismiss for lack of prosecution under Rule 41. *Id*. at 589, 93-94.

22   There, the district court determined that dismissal of the action was warranted based

23   on plaintiff's long record of delay without good cause. *Id*. at 589-90. Plaintiff had,

24   among other things, served defendants with an amended complaint only after

25   receiving an OSC as to why his case should not be dismissed for failure to prosecute,

26   waited fifty-nine (59) days to file his response to defendants' motion for partial

27   dismissal, and failed to respond to defendants' objection to discovery or to compel

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

26

1659.202

1    compliance. *Id.* In reviewing the lower court's decision, the court held that, based on

2    the record, there was no significant delay involved. *Id.* at 591. The court reasoned

3    that there were only minimal periods of inactivity, plaintiff or his counsel did not miss

4    a single actual court appearance, plaintiff's delay in responding to defendants'

5    concerns was more likely to hurt plaintiff than defendants, and defendants had been

6    equally dilatory in this case. *Id.* at 591-592. The court held that the trial court should

7    have employed an alternative sanction before depriving plaintiff of his cause of action.

8    *Id.* at 593-94.

9         In the present case, Plaintiffs' actions do not come close to the conduct of the

10   plaintiff in the *Mulbah* case; yet, the plaintiff's actions there did not even warrant

11   dismissal. Here, none of the five factors considered by Ninth Circuit courts for

12   terminating sanctions favored the defense. Notwithstanding, this Court found that

13   four of the five factors weighed in favor of dismissal. Relevant caselaw, as well as

14   the history of litigation between these Parties, which is well documented and known

15   to this Court, show otherwise. The Court should reconsider its Order and reinstate

16   Plaintiffs' claims.

17        **1.  Expeditious Resolution of Litigation and the Court's Docket.**

18        The first two factors, expeditious resolution of litigation and the court's need

19   to manage its docket, weigh strongly against terminating sanctions. In ruling on these

20   two factors, Ninth Circuit courts look carefully at the plaintiff's role in complying, or

21   failing to comply, with orders issued by the court. *Yourish*, 191 F.3d at 990; *Cannon*,

22   225 F.R.D. at 251. See, e.g., *Herandez v. City of El Monte*, 138 F.3d 393, 399 (9th

23   Cir. 1998) (finding that plaintiffs' "judge-shopping" tactics ran counter to the public's

24   interest in expeditious litigation); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir.

25   1992) (noting that the court had granted plaintiff, a pro se litigant, "more than

26   adequate sensitivity" and went out of its way to assist him); *Yourish*, 191 F.3d at 990

27   ("Plaintiffs' noncompliance has caused the action to come to a complete halt, thereby

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

27

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

allowing Plaintiffs to control the pace of the docket rather than the Court."). This includes plaintiff's role in obstructing defendants' attempts to take discovery, the credibility of plaintiff's explanations for failing to abide by the court's orders, and the efforts plaintiff undertook toward fulfilling its court-imposed obligations. See *Cannon*, 225 F.R.D. at 251.

In the case at bar, the Court rests its Order granting Defendants' Motion primarily on the grounds of the Parties' joint failure to file the PTCOs by the deadlines set by the Court. The Court notes that "defense counsel failed to file an ordered declaration prior to the March 30, 2017 status conference attesting to his compliance with the local rules." (See Dkt. No. 198 pg. 5 2nd ¶). Plaintiffs respectfully submit that this reasoning is legally flawed as it fails to consider that Defendants' conduct was the primary, if not the only, cause for delays. This Court should make a ruling that is proportionate to the blameworthiness, if any, of Plaintiffs' actions.

In addressing the first basis for the Court's ruling, the Court unfairly groups plaintiffs and defendants together and finds that "[b]oth Parties have repeatedly disobeyed the Court's orders, even after the Court warned the parties that they must strictly abide by the Court's orders and the local rules." (See Dkt. No. 198). The Court specifically refers to (1) the December 2, 2016 PTCO, (2) the January 17, 2017 PTCO, (3) the March 30, 2017 PTCO, and the (4) July 18, 2017 PTCO when referencing the warning. *Id*. As support for its order, the Court also cites to Local Rule 16-7 for the proposition that "it is the obligation of plaintiffs' counsel to prepare the PTCO, while it is the obligation of all counsel to sign it." (See Dkt. No. 198). The Court appears to omit a critical portion of that same rule which states: "*It is the duty of all counsel to cooperate with plaintiff's counsel* in the preparation and submission of the Final Pretrial Conference Order as required by this rule." Local Rule 16-7 (emphasis added).

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1    The Court's findings misrepresent the history of this litigation.  As stated

2  above, Defendants' counsel was significantly late and often not heard from days, if

3  not weeks, in connection with pretrial filings.  The December 2016 PTCO was filed

4  unilaterally due to Defendants' evasive tactics and avoidance of Plaintiffs' meet and

5  confer attempts.  Tellingly, on December 9, 2016, Defense counsel offered the

6  following excuse in connection with his late Memorandum filing: "The attached

7  Memorandum was prepared to be filed on November 21, 2016, and I thought it I had

8  filed it, but had not... The mistake was entirely mine as [sic] did not notice my error

9  until now." (See Dkt. 132-1, 2:7-9).

10    After the December 2016 PTCO filing, Defense counsel continued to evade

11  cooperation with Plaintiffs.  This was even after Plaintiffs' counsel reached out

12  separately to offer Defendants assistance in finalizing Defense counsel's documents

13  for the PTCO.  Defendants' counsel did not reply until there was only a little over

14  three (3) hours remaining until the close of business, on the day before the filing was

15  due and explained that he was "not quite done on the Pre-Trial Conference order

16  document" and that he would contact Plaintiffs in "a few hours." (Dkt. 144-3, p.42;

17  ¶32).  After failure to file a joint PTCO by January 17, 2017, this Court vacated all

18  dates and removed the action from the active caseload. (See Dkt. 143).

19    In March 2017, Plaintiffs' counsel continued to do everything in its power to

20  work with Defense counsel to ensure the timely and proper filing of the March 30,

21  2017 PTCO; however, the elusive tactics persisted.  See Declaration of A. Tyler

22  Mellos (Dkt. 175-1).  The blatant delays and misrepresentations by Defendants'

23  counsel are telling.  Defense counsel's tactics are highlighted during the time leading

24  up to the March 30 deadline, when, despite constant hounding by Plaintiffs,

25  Defendants continuously delayed sending their portion of the PTCO to Plaintiffs.

26  (See generally, Mellos Decl., Dkt. 175-1).

27

28

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

1    Not much changed with the filing of the final PTCO in July 2017.  After all,

2  this was Defendants' counsel's opportunity to take advantage of delayed filings and

3  a frustrated Court.  After an unsuccessful settlement conference, Plaintiffs provided

4  Defendants with their updated portion of the PTCO on Wednesday, July 12, 2017.

5  Plaintiffs' version had no new matter added – only the removal of certain affirmative

6  defenses. (See Dkt. 185-2, ¶4).  Defendants did not provide Plaintiffs with their

7  portions of the updated PTCO until 11:10PM on July 13.  In light of the Court's

8  previous admonishments to both Parties, Plaintiffs did not want to file anything other

9  than a joint PTCO; however, Mr. Spellerberg made it very difficult.  Mr. Spellerberg

10  even sent an Updated Proposed PTCO to Plaintiffs at 4:58pm on Friday, July 14,

11  2017, with more changes.  By this point, Defendants' proposed changes were late.

12  After working in the revisions, Plaintiffs filed the joint PTCO.

13    Defense counsel exhibited a pattern of avoiding communications with Plaintiffs

14  during the critical times leading up to each attempted filing of the PTCO.  Defense

15  counsel knew that this Court would likely dismiss the action if there were any further

16  delays and used this to his advantage.  Constantly delaying and hindering the

17  Plaintiffs' ability to adequately prepare a Joint PTCO, and then immediately playing

18  the victim and objecting that Plaintiffs have done something detrimental.  In the

19  greater context of this history, it is beyond question that it was Defense counsel, not

20  Plaintiffs, that caused significant and inexcusable delay.  As such, the first two factors

21  very strongly counsel against terminating sanctions.

22             **2.   The Risk of Prejudice to Defendants**

23    The third factor, risk of prejudice to Defendants, looks at the impact of the non-

24  compliance on the defendant's ability to go to trial or on the Court's ability to issue a

25  rightful decision of the case.  *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th

26  Cir. 1998).  If a plaintiff comes forth with an excuse for his delay that is anything but

27  frivolous, the defendant must show at least some actual prejudice.  *Nealey*, 662 F.2d

28

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PROSECUTION

1659.202

1275, 1281 (9th Cir. 1980); *Johnson v. Boykin*, 2012 U.S. Dist. LEXIS 181277, *7 (E.D. Cal. 2012) ("The third factor does not favor dismissal, as defendant has not been prejudiced by plaintiff's actions and [the defendant] may receive a windfall for his dilatory behavior.").   For example, in *Johnson*, plaintiff's counsel reached out to defendant to finalize a settlement agreement. *Id*. at *4.  The plaintiff's counsel alleged that he either left messages for or spoke to defendant's counsel in January and March 2011, and in October, November, and December 2012, and that defense counsel had told plaintiff she was working on completing the settlement. *Id*. at *3-5.  The court held this type of conduct had prejudiced plaintiff rather than defendant and that defendant's dilatory behavior did not favor dismissal.

The Court cites to *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 for the proposition that a court may dismiss an action on the sole basis of a plaintiff's failure to prosecute the action and without a finding of actual prejudice to defendant. However, the quoted portion of the *Anderson* case appears to have been taken out of context.  In *Anderson*, the Ninth Circuit went on to hold that if there is a showing that no actual prejudice occurred, the appellate court should consider that factor when determining whether the trial court exercised sound discretion.   Courts addressing Rule 41 dismissals have reasoned as follows:

> "But courts interpreting the rule uniformly hold that it cannot be automatically or mechanically applied.  Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits . . . Consequently, dismissal "must be tempered by a careful exercise of judicial discretion." . . . While the propriety of dismissal ultimately turns on the facts of each case, ***criteria for judging whether the discretion of the trial court has been soundly exercised have been stated frequently*** . . . Therefore, in situations where a party is not responsible for the fault of his attorney, dismissal may be invoked ***only in extreme circumstances***.  *Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1339 (9th Cir. 1970)."

*Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974) (citations omitted) (emphasis added).

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

31

1659.202

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

1    Here, this Court has already acknowledged that there is "no specific showing

2   of prejudice to Defendants" that has been made (See Dkt. No. 198 pg. 5).  The Court

3   order cites to *Henderson v. Duncan*, 779 F.2d 1421, 1425 for the holding that a

4   showing of prejudice is not "determinative."  See Dkt. No. 198 pg. 5).  However, the

5   court in *Henderson* did not address whether the lack of prejudice would count in favor

6   of the plaintiff on a motion to dismiss for lack of prosecution under Rule 41.  *See*,

7   *generally*, 779 F.2d at 1425.  Additionally, as federal courts have held, a finding of

8   no prejudice should be considered by the appellate court as a separate factor in

9   determining whether the trial court exercised sound discretion.  *Anderson*, 542 F.2d

10   at 524.

11    Defendants have benefitted greatly from their conduct and have unjustly

12   prevailed on a motion to dismiss under Rule 41.  In fact, none of the delays in this

13   case have caused any prejudice to Defendants.  Accordingly, Defendants cannot show

14   a risk of prejudice in support of their Motion.  This factor strongly weighs against

15   dismissal.

16              **3.  Public Policy Favoring Disposition of Cases on their Merits**

17    The public policy favoring disposition of cases on their merits strongly

18   counsels against dismissal.  The fourth factor almost always weighs against dismissal.

19   *Martinez v. Cty. of Riverside Sheriff Dep't*, 2017 U.S. Dist. LEXIS 81509, *3 (C.D.

20   Cal. 2017) ("[T]he public policy [factor] . . . weighs against dismissal, as it always

21   does.").  Here, the Court has already found that this factor weighs against dismissal

22   (See Dkt. No. 198 pg. 5).

23              **4.  Less Drastic Alternatives**

24    The availability of less drastic alternatives also counsels against dismissal.

25   Ninth Circuit courts consider the possibility of dismissing one of two actions (in cases

26   involving two actions), issuing monetary sanctions, and/or the issuance of an order to

27   show cause.  See *Hernandez*, 138 F.3d at 399-400; *Gardner v. Bauer*, 2015 U.S. Dist.

28

32

1659.202

LEXIS 72640, *4 (E.D. Cal. 2015) ("Although the applicable deadline has now passed, plaintiff failed to pay the monetary sanctions and failed to respond to the order to show cause; nor has plaintiff even requested an extension of time to do so."); *Reyes v. Radcliff*, 2015 U.S. Dist. LEXIS 70029, *5-6 (E.D. Cal. 2015) ("[T]he court has already attempted less drastic sanctions – monetary sanctions and the issuance of an order to show cause – prior to recommending dismissal.").

The Court cites to *Malone v. U.S. Portal Service*, 833 F.2d 128, 133 (9th Cir. 1987) and appears to hold that in response to a willful violation of a pretrial order, plaintiffs should not be surprised by the harsh sanction of dismissal. However, *Malone* is inapposite in this context. *Malone* concerned a case wherein the plaintiff's attorney had presented her case in a "confused and inefficient manner" at trial, and where the district court declared a mistrial on its own motion based on the plaintiff's counsel's lack of preparation. *Id.* at 129. Following the mistrial, the court set a pretrial order and stated that motions for continuance would not be accepted. *Id.* Plaintiff's attorney failed to comply. *Id.* Eventually, the case was dismissed for failure to comply with the pretrial order. *Id.* The Ninth Circuit held that the dismissal was warranted because the mistrial, pretrial order, and order of dismissal were ***all*** instituted in response to plaintiff and plaintiff's counsel's lack of preparation. *Id.* at 132.

In the case at bar, the Court did not consider the possibility of issuing sanctions specifically tailored to address the history of dilatory and gamesmanship tactics employed by Defendants. Instead, the Court again appears to have grouped both Parties together in its related discussion of this factor. The Court should have considered the possibility of issuing monetary sanctions against Defendants and their counsel, jointly and severally, for preventing Plaintiffs from timely filing the revised PTCO. Such sanction would have been consistent with Ninth Circuit precedent. The Court could have also terminated Defendants' counterclaims as a justifiable sanction in this matter or issued an OSC as to why Defendants' counterclaims should not be dismissed for their refusal to cooperate with Plaintiffs' counsel in good faith. Because

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

33

PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PROSECUTION

1  less drastic remedies existed to remedy the instant situation, this factor weighed

2  against dismissal, warranting reconsideration.

3  **IV.   CONCLUSION**

4     Defendants should not get a windfall out of their bad acts.  From the very first

5  time that the Final Pretrial Conference and trial dates were reset, Defense counsel

6  engaged in an inexcusable pattern of misconduct, culminating in a Rule 41 Motion

7  that was used as a sword, instead of a shield, against Plaintiffs.  Plaintiffs respectfully

8  request this Court to reconsider the order dismissing Plaintiffs' claims and reinstate

9  Plaintiffs' Complaint.

10

11                          Respectfully submitted,
                            ADLI LAW GROUP, PC
12  Dated: October 23, 2017      By:      /s/Dariush G. Adli
13                                   Dariush G. Adli, Esq.
14                                   Drew H. Sherman, Esq.
                                     Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

1659.202

ADLI LAW GROUP, PC
www.adlilaw.com
(213) 623-6546

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing documents with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on October 23, 2017:

PLAINTIFFS DAVID HAKIM, SAN JULIAN DISCOUNT MART, INC., AND MYBECCA, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE ACTION FOR LACK OF PROSECUTION

Participants in the case who are registered CM/ECF users will be served by the CM/ECF System.

I certify under penalty of perjury that the foregoing is true and correct. Executed October 23, 2017 at Los Angeles, California.

/s/Drew H. Sherman
Drew H. Sherman

35

1659.202